FILED
May 07, 2026
01:58 PM(ET)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT KNOXVILLE

| | |
|---|---|
| **BONNIE BAIRD,**<br>　　　　**Employee**,<br>**v.**<br>**TARGET CORP.,**<br>　　　　**Employer**,<br>**and**<br>**INDEMNITY INS. CO. OF**<br>**NORTH AMERICA,**<br>　　　　**Carrier**. | **Docket No. 2020-03-1286**<br><br><br>**State File No. 24645-2015**<br><br><br><br>**Judge Pamela B. Johnson** |

## COMPENSATION ORDER

Bonnie Baird uses a wheelchair after a life-altering work injury. The sole issue was the extent of reasonable and necessary home modifications she required. Ms. Baird requested a tear down of her home and building a new house, as well as attorney fees. Target argued the modifications should be made to her existing home. It also asked for a deadline to require Ms. Baird to move out of an assisted living facility, and it denied her entitlement to fees.

For the reasons below, the Court holds Ms. Baird is entitled to modifications to her existing home. Additionally, Ms. Baird must leave assisted living within 30 days of completion of the home modifications or become responsible for its cost. Finally, Ms. Baird is not entitled to attorney fees.

### Claim History

*Injury and Settlement*

On March 16, 2015, Ms. Baird was struck by a falling shelf, injuring her right foot. Ms. Baird was diagnosed with bilateral complex regional pain syndrome and needed multiple surgeries, including bilateral above-knee amputations, which left

1

her using the wheelchair.

The parties settled Ms. Baird's claim for 100% permanent disability with future medical benefits, which the Court approved in 2024. In the agreement, the parties reserved the issue of the "nature, extent, and scope of any medically necessary home modification(s)."

Ms. Baird moved into her home three days before her work injury. Her home was built in 1945 and has approximately 1,200 square feet living space with a similarly-sized basement. She moved into an assisted-living facility in 2021 because she could not live independently in her home. Target paid for the facility, whose services included housing, food, and nursing.

Regarding her home, Ms. Baird said the entry and interior doorways are too narrow for her wheelchair to pass. Ms. Baird could not use the stairs to her basement so she can operate the sump pump and keep water from her basement. She also could not access the deck, back steps, or backyard because she could not clear the back doorway or use the steps in her wheelchair.

In her kitchen, Ms. Baird could not reach the heating surfaces of the stove or its controls, so she removed it and used an electric hot plate to warm her meals. She was unable to reach all refrigerator and freezer shelves. She also could not reach all shelves in her upper and lower cabinets or the back of her counters. She was unable to reach the controls of her faucet to wash dishes.

In her laundry room, she could not reach to load her top-load washer.

In her bathroom, she had difficulties reaching all shelving in her vanity as well as the faucet controls. She also cannot roll herself into the shower to bathe and must transfer from her wheelchair to a shower seat, but the space is too narrow for her to transfer. She said she needs a shower with accessible water controls and a handheld shower head.

In her bedroom, she needs a lower bed to allow her to transfer from her wheelchair.

Ms. Baird said she preferred to tear down her existing home and build a single-level home with an open-floor plan, designed to be more functional and compatible with her limitations. She is concerned that modifications to her existing home, based on its age, will reveal structural, electrical, plumbing and/or other problems and

2

potentially reveal asbestos. She wants her home to be safe and comfortable.

Further, Ms. Baird testified that her bones are soft due to her complex regional pain syndrome, so it is painful to put pressure on her stumps, and she is unable to wear prostheses. She also has hip pain and might require more surgery. Despite this, Ms. Baird has tried to remain physically active and prefers a manual wheelchair to engage her core and upper body. She does not want to change to an electric wheelchair or electric lift chair for fear of losing her physical strength and independence.

Once her home is modified or rebuilt, she is willing to leave assisted living within a reasonable time. She asked the Court to award the amount to her in a lump sum.

*Home Modification Recommendations*

Target deposed Dr. William Obremsky, her authorized treating physician. He testified that changes to Ms. Baird's home are necessary to allow her to perform activities of daily living, such as entering/exiting the home, reaching and using her appliances, and bathing, cooking, and cleaning. Ms. Baird's home would require a ramp to allow access to the home, installation of grab bars, and widening of doorways. She would also need a roll-under sink and lower counters in the kitchen and bathroom and a front-loading washer. However, Dr. Obremsky could not say the exact home modifications needed or the costs, as these opinions fall outside his medical expertise.

Target also deposed Cindi Petito, a licensed occupational therapist, home accessibility specialist, and certified wheelchair-seating specialist and assistive technology specialist. She reviewed medical records, interviewed Ms. Baird, and performed a virtual home assessment so Ms. Baird "can return home and live independently and safely." In summary, she recommended:

- A safety-alert system and smart-home system
- A level landing front and back doors with wider entry doors
- A new ramp or lift at the front door
- A paved concrete driveway with a landing
- Paved paths to the back of the home with concrete landings
- A ramp at the back deck or lift to access the back door
- An automatic garage-door opener

3

- An interior stair lift for basement access
- Wider interior doors and doorways
- An enlarged bathroom for safe transfers
- Relocation of laundry from the basement to the main level
- Lower, wheelchair-compatible shelving in the kitchen, bath, and laundry
- Lower, compatible kitchen appliances, bathroom vanity, and laundry
- Roll-under sinks in the bathroom and kitchen
- A roll-in shower
- Carpet removal and installation of solid-surface flooring
- Other details.

Ms. Petito also recommended a power-lift wheelchair for Ms. Baird that would give her full access to all current cabinets and appliances and prevent overuse of her upper body.

*Ms. Baird's Expert*

Ms. Baird hired Jason Watson with Holp Construction to prepare estimates to modify her home and to tear down and rebuild. His estimate to modify the home was $282,641.15. The modifications included widening all entry and interior doorways and hallways, removing all carpet and installing solid-surface flooring. Additionally, lifts would be added to the back deck and interior basement steps, providing access to Ms. Baird's backyard and basement. Alternatively, a ramp would be added to the back deck for backyard access.

Cabinetry in the kitchen and bath would be replaced with cabinetry designed to her abilities. Kitchen appliances would be replaced with compatible appliances. The kitchen sink would be replaced with a roll-under sink, giving Ms. Baird access to the faucet controls. The bathroom would be enlarged for a roll-in shower and with an accessible vanity and toilet.

The estimate also included building a detached garage to provide Ms. Baird access to her home from the detached garage to the ramp at her front door. Mr. Watson estimated that the remodel would take nine months to one year to complete.

He estimated that to demolish the existing home and rebuild a new, compatible home would cost $369,000. He believed a tear down and new single-level floor plan would be a better option for Ms. Baird because the home's current

4

two-level design with a basement and power-dependent lifts are problematic. A newly constructed slab home would have an attached garage.

On cross-examination, Mr. Watson admitted that he is not a licensed contractor. He does not have medical training and did not rely on any medical records or opinions to determine the extent of modifications needed to meet Ms. Baird's needs. He did not meet with Ms. Baird or measure her abilities or wheelchair.

*Target's Expert*

Target hired general contractor Arch Willingham to evaluate and recommend home modifications to make Ms. Baird's home accessible. He inspected the home and reviewed medical records, including home assessments by occupational therapists. He estimated that necessary modifications would cost $257,581.00 and take fewer than two months once the lifts arrived.

Mr. Willingham recommended widening every door and entryway throughout the interior and exterior of the home. A touchless, automatic door opener would be installed with a smart lock and camera system. He also recommended a fall alert system and camera system with two exterior cameras.

The front door ramp would be replaced with a lift, concrete landing, and separate stairs. A lift would be added to the back of the home as well. A concrete driveway and sidewalk would be added to allow access from the driveway to the front door and around to the back deck. A stairlift could be added to interior basement steps for access to the basement but was not included in the estimate.

In the kitchen, the cabinets would be replaced with cabinets at her reach height from a manual wheelchair. The refrigerator and stove would be replaced with a refrigerator with a bottom, pull-out freezer and a stove with front controls. The sink would be replaced with a roll-under sink.

The bathroom would be enlarged significantly to allow transfer from her wheelchair to the toilet and shower. Modifications would include installing a fully accessible vanity, toilet, and shower.

The washer and dryer would be moved to the main floor and replaced. Wheelchair-accessible shelving and a clothing rack would be added.

The estimate includes removing the carpeting and replacing it with solid

5

surface flooring throughout the home.

*Attorney Fees*

Ms. Baird argued that she is entitled to attorney fees because two years have passed since she settled her claim and left open the issue of home modifications. During that time, Target has not made any modifications to the home but instead offered to pay her for the modifications and let her manage the modifications or the tear down and rebuild.

However, she cannot supervise any home modification or tear down and rebuild. She claimed that the work required to prosecute the home modification award was not contemplated in the original attorney fee. She asked for an adequate sum to compensate her attorney for his work since the settlement.

Target objected to attorney fees for the home modification dispute based on the lack of any authority. For the last five years, Target paid over $1,000,000 in medical, housing, and food for Ms. Baird in assisted living. Further, Ms. Baird has not shown that Target unreasonably failed to provide medical benefits under section 50-6-226(d)(1)(B). Target initiated efforts to resolve the home modification issue by first writing Dr. Obremsky and later deposing him and hiring the home assessment specialist, Ms. Petito, and general contractor, Mr. Willingham.

**Findings of Fact and Conclusions of Law**

Ms. Baird must prove her claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2025).

*Medically Necessary Home Modifications*

Section 50-6-204(a)(1)(A) requires the employer to furnish, free of charge to the employee, medical treatment and other reasonable and necessary apparatus ordered by the attending physician.

Ms. Baird argued that "apparatus" includes a tear down of her home and the rebuild. Target disagreed. It acknowledged responsibility for home modifications but denied that it must build a new home. It also argued that it should not be required to continue to pay for her assisted living.

In *Dennis v. Erin Truckways, Ltd.*, 188 S.W.3d 578, 592 (Tenn. 2006), the

6

Tennessee Supreme Court discussed the employer's responsibility when an injured employee needs a wheelchair. The Court declined to award specialized housing to the employee, stating:

> Requiring an employer to pay the full cost of specialized housing would be an unintended windfall for the injured employee because it would relieve that employee of the entire cost of housing—a cost which the statute contemplates he will be paying with the wage-replacement he receives in the form of compensation benefits.

However, the Court added:

> Unlike the entire cost of housing itself, in our view, modifications such as ramps, grab bars, widened doorways, and accessible cabinets and appliances are within the statute's definition of "apparatus" when such modifications are found to be medically necessary. If it is possible to modify the injured employee's existing home, then the employer shall bear the cost of all modifications deemed medically necessary.

*Id*.

Here, Dr. Obremsky agreed that Ms. Baird's home required modifications to allow her to perform activities of daily living. Ms. Petito specified the home modifications made reasonably necessary by Ms. Baird's work injury and wheelchair.

The parties disagreed to the extent of the modifications, with Ms. Baird preferring a new home. While a new build may be preferred, this Court does not have the authority to order a rebuild under *Dennis* and the Workers' Compensation Law. *See also Calderon v. Auto Owners Ins. Co.,* No. M2015-01707-SC-R3-WC, 2016 Tenn. LEXIS 813, at *9-10 (Tenn. Workers' Comp Panel Oct. 24, 2016).

Ms. Baird's wish for a safe, comfortable home is reasonable. But an expectation that Target remedy significant problems with the house such as asbestos is not reasonable and strikes the Court as an unintended windfall. Ms. Baird's desire for a manual wheelchair is also reasonable. But occasional use of lifts in a modified home, rather than a brand-new home, would not entirely frustrate her goal of maintaining physical strength and independence.

Next, this Court must decide the extent of home modifications made

7

reasonably necessary by the work injury. Both Mr. Watson and Mr. Willingham offered opinions on the modifications required, but Mr. Willingham offered the more persuasive opinions. He is a general contractor and relied on the recommendations of medical professionals, while Mr. Watson did not.

Based on a preponderance of the evidence, the Court holds that Ms. Baird is entitled to all modifications included in Mr. Willingham's report (Exhibit 6, pages 9-11) at $250,905. So that she may stay in her manual wheelchair, she is also entitled to modifications to her kitchen, which Mr. Willingham said at trial would cost an additional $6,676. Ms. Baird is further entitled to interior access to her basement through a stair lift and to exterior access through an automatic garage door opener compatible with the smart-home system. Mr. Willingham did not offer the cost of these items in his report or trial testimony.

Ms. Baird asked in her closing argument that the total cost of the home modifications be paid directly for her to manage and take the risk. Target agreed. However, the parties offered no authority allowing this Court to order the proposed result without a full agreed settlement. Thus, Target shall provide the home modifications by hiring a general contractor and paying the contractor directly.

Ms. Baird shall move from assisted living within 30 days after completion of the modifications or resume full responsibility for the cost of the facility.

*Attorney Fees*

Section 50-6-226 allows attorney fees in workers' compensation cases. Section 50-6-226(a)(1) provides for an award of 20% of the amount of the recovery to the injured employee, but the fees must be paid by the party employing the attorney. However, under section 50-6-226(a)(2), medical costs voluntarily paid by the employer are excluded in determining the award for calculating the attorney's fee.

Further, section 50-6-226(d)(1) states in part that, in addition to attorney fees available above, the Court may award reasonable attorney fees when the employer fails to furnish medical benefits provided for in a settlement or unreasonably fails to timely initiate benefits to which the employee is entitled, including medical benefits under section 50-6-204.

Ms. Baird agreed that Target has not denied any medical benefits or any request for home modifications to her home. Instead, Target initiated the home

8

assessment, the taking of Dr. Obremsky's deposition, and hired the general contractor to prepare an estimate. In the interim, Target continued to pay for Ms. Baird's assisted living, which included medical, housing, and food, for five years. Moreover, Ms. Baird cited no authority allowing for an award of attorney fees beyond the fees awarded at the time she settled her claim.

Thus, the Court finds Ms. Baird has not shown by a preponderance of the evidence that she is entitled to additional attorney fees under sections 50-6-226(a)(1) or (d)(1).

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Baird's request for home modifications is granted as outlined above.

2. Target shall no longer be responsible for the cost of assisted living after 30 days of the completion of the home modification, or sooner if Ms. Baird leaves the facility before then.

3. Ms. Baird's request for attorney fees is denied.

4. Target shall pay the $150.00 filing fee within five business days of entry of this order, for which execution may issue.

5. Target shall file a Statistical Data Form (SD-2) within ten business days of entry of this order.

6. Unless appealed, this order shall become final in 30 days.

**ENTERED May 7, 2026.**

**JUDGE PAMELA B. JOHNSON**
**Court of Workers' Compensation Claims**

9

# APPENDIX

The technical record consists of all documents filed on the TN Comp electronic filing system.

*Exhibits:*
1. Photos
2. Mr. Watson's Report
3. Deposition of Dr. Obremsky
4. Deposition of Ms. Petito
5. Mr. Willingham's CV
6. Mr. Willingham's report
7. Enlarged Rendering of Modified Home

# CERTIFICATE OF SERVICE

I certify that a copy of this order was sent as shown on May 7, 2026.

| Name | Mail | Email | Service sent to: |
|------|------|-------|------------------|
| John Rosson, Employee's Attorney | | X | rossonlaw@aol.com |
| Robert J. Uhorchuk, Thomas Smith, Employer's Attorneys | | X | rju@spicerfirm.com tsmith@spicerfirm.com |

*Penny Shrum*
**PENNY SHRUM, COURT CLERK**
**wc.courtclerk@tn.gov**



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   - ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   - ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s) (Requesting Party):** _____    ☐ Employer ☐ Employee

Address: _____    Phone: _____

Email: _____

Attorney's Name: _____    BPR#: _____

Attorney's Email: _____    Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s) (Opposing Party):** _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### Affidavit of Indigency

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived.  The following facts support my poverty.

1. Full Name:_____     2. Address: _____

3. Telephone Number: _____     4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ | per month | beginning _____ |
| SSI | $ _____ | per month | beginning _____ |
| Retirement | $ _____ | per month | beginning _____ |
| Disability | $ _____ | per month | beginning _____ |
| Unemployment | $ _____ | per month | beginning _____ |
| Worker's Comp. | $ _____ | per month | beginning _____ |
| Other | $ _____ | per month | beginning _____ |

LB-1108 (REV 11/15)                                                                    RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental $ _____ per month

Groceries $ _____ per month    Telephone $ _____ per month

Electricity $ _____ per month    School Supplies $ _____ per month

Water $ _____ per month    Clothing $ _____ per month

Gas $ _____ per month    Child Care $ _____ per month

Transportation $ _____ per month    Child Support $ _____ per month

Car $ _____ per month

Other $ _____ per month (describe: _____ )

10. Assets:

Automobile $ _____ (FMV) _____

Checking/Savings Acct. $ _____

House $ _____ (FMV) _____

Other $ _____ Describe: _____

11. My debts are:

| Amount Owed | To Whom |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires: _____

LB-1108 (REV 11/15)        RDA 11082